# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORMA VAZQUEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TRIAD MEDIA SOLUTIONS, INC., a New Jersey corporation; ZETA INTERACTIVE CORPORATION, a Delaware Corporation, and SPIRE VISION LLC, a Delaware Corporation, <br><br> Defendants. | Civil Action No. 2:15-cv-07220-WHW-CLW <br><br> Hon. William H. Walls, U.S.D.J. <br><br><br> **Motion Returnable:  November 5, 2018** <br><br><br> <u>**Oral Argument Requested**</u> |

---

### BRIEF OF DEFENDANT TRIAD MEDIA SOLUTIONS, INC.
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

**BRESSLER, AMERY & ROSS**
A Professional Corporation
325 Columbia Turnpike
Florham Park, New Jersey 07932
P.O. Box 1980
Morristown, New Jersey 07962
(973) 514-1200
Attorneys for Defendant
  TriAd Media Solutions, Inc.

On the Brief:
  Mark M. Tallmadge, Esq.
  Christopher G. Salloum, Esq.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ....................................................................................4

LEGAL ARGUMENT .........................................................................................12

    POINT I...............................................................................................................13

    ZETA IS CONTRACTUALLY OBLIGATED TO REIMBURSE TRIAD FOR REASONABLE ATTORNEYS' FEES INCURRED DEFENDING PLAINTIFF'S TCPA LAWSUIT. ................................................................................................13

        A.    Under Section 11's Unambiguous Terms, Zeta Agreed To Reimburse TriAd For All Reasonable Attorneys' Fees Arising From TCPA Lawsuits. ...........................................15

        B.    Even If The Court Concludes That Section 11 Is Ambiguous, The Doctrine of *Contra Proferentem* And Zeta's Course of Conduct Require that this Court Construe Any Ambiguity Against Zeta. .......................................22

    POINT II..............................................................................................................28

    THE ATTORNEYS' FEES INCURRED BY TRIAD IN DEFENSE OF THE TCPA COMPLAINT ARE REASONABLE...........................................................................................28

CONCLUSION ....................................................................................................32

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Airco Alloys Div., Airco, Inc. v. Niagra Mohawk Power Corp.,
   430 N.Y.S.2d 179 (4th Dept. 1980)....................................................................27

Albany Sav. Bank, F.S.B. v. Halpin,
   117 F.3d 669 (2d Cir. 1997)..............................................................................22

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)...........................................................................................12

Bethlehem Steel Co. v. Turner Construction Co.,
   141 N.E.2d 590 (N.Y. 1957).............................................................................19

Boyle v. County of Allegheny,
   139 F.3d 386 (3d Cir. 1998)..............................................................................12

Bradley v. Earl B. Feiden, Inc.,
   864 N.E.2d 600 (N.Y. 2007).......................................................................13, 14

Breed v. Ins. Co. of N. Am.,
   385 N.E.2d 1280 (N.Y. 1978)...........................................................................19

Carter-Wallace, Inc. v. Tambrands Inc.,
   744 N.Y.S.2d 11 (1st Dept. 2002).....................................................................14

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)...........................................................................................12

Collins v. Mary Kay, Inc.,
   874 F.3d 176 (3d. Cir. 2017).............................................................................13

Greenfield v. Philles Records,
   780 N.E.2d 166 (N.Y. 2002).............................................................................15

Hooper Assocs. v. AGS Computers,
   548 N.E.2d 903 (N.Y. 1989).............................................................................14

ii

Jacobson v. Sassower,
    489 N.E.2d 1283 (N.Y. 1985) ......................................................................22

Law Debenture Tr. Co. v. Maverick Tube Corp.,
    595 F.3d 458 (2d Cir. 2010) ........................................................................19

Lipper Holdings, LLC v. Trident Holdings LLC,
    766 N.Y.S.2d 561 (1st Dept. 2003) .............................................................14

Mas v. Two Bridges Associates,
    554 N.E.2d 1257 (N.Y. 1990) ......................................................................13

McCleary v. City of Glens Falls,
    819 N.Y.S.2d 609 (3d Dept. 2006) ..............................................................14

Millea v. Metro-North R.R.,
    658 F.3d 154 (2d Cir. 2011) ........................................................................28

Muzak Corp. v. Hotel Taft Corp.,
    133 N.E.2d 688 (N.Y. 1956) ........................................................................15

Nager v. Teachers' Retirement Sys. of the City of N.Y.,
    869 N.Y.S.2d 492 (1st Dept. 2008) .............................................................28

Rahmey v. Blum,
    466 N.Y.S.2d 350 (2d Dept. 1983) ..................................................28, 30, 31

Reape v. New York News, Inc.,
    504 N.Y.S.2d 469 (2d Dept. 1986) ..............................................................20

Reiss v. Fin. Performance Corp.,
    764 N.E.2d 958 (N.Y. 2001) ........................................................................15

River View Assocs. v. Sheraton Corp. of Am.,
    306 N.Y.S.2d 153 (1st Dept. 1969) .............................................................20

Sutton v. East River Sav. Bank,
    435 N.E.2d 1075 (N.Y. 1982) ......................................................................20

Technicon Electronics Corp. v. American Home Assurance Co.,
    542 N.E.2d 1048 (N.Y. 1989) ......................................................................17

W.W.W. Assoc. v. Giancontieri,
   566 N.E.2d 639 (N.Y. 1990) ....................................................................... 15, 19

Wallace v. BSD-M Realty, LLC,
   36 N.Y.S.3d 884 (2d Dept. 2016) ................................................................... 27

Weissman v. Sinorm Deli,
   669 N.E.2d 242 (N.Y.1996) ........................................................................... 13

White v. Cont'l Cas. Co.,
   878 N.E.2d 1019 (N.Y. 2007) ........................................................................ 14

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ........................ *passim*

**Other Authorities**

BLACK'S LAW DICTIONARY (7th ed. 1999) ..................................................... 17, 18

Fed. R. Civ. P. 56(a) ....................................................................................... 12

Local Civil Rule 56.1 ......................................................................................... 4

## PRELIMINARY STATEMENT

This matter arises out of a purported class action lawsuit filed by plaintiff, Norma Vazquez, individually and on behalf of all others similarly situated, against defendants TriAd Media Solutions, Inc. ("TriAd"), Zeta Interactive Corp. ("Zeta") and Spire Vision, LLC ("Spire")(collectively, "Zeta") for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"). Plaintiff alleges she received unsolicited text messages from defendants. However, TriAd does not send text messages in the conduct of its business, but rather, TriAd contracted with Zeta to provide advertising services (although not intended to include texts). That contract, the June 12, 2014 Advertiser Agreement, included an indemnification provision whereby Zeta agreed to indemnify TriAd for any claims arising out of any violation of the TCPA. Therefore, when TriAd was served with the Complaint in this matter, it contacted Zeta to tender this claim pursuant to the Advertiser Agreement.

Zeta accepted tender of the claim and agreed to provide defense and indemnity pursuant to the Advertiser Agreement. Counsel for Zeta worked with counsel for TriAd to defend against the claims in this matter. Settlement was eventually reached with plaintiff and her claims were dismissed. Thereafter; however, Zeta refused to reimburse TriAd for its attorneys' fees incurred in defense of this lawsuit. TriAd had previously asserted a crossclaim against Zeta based upon the language of the

Advertiser Agreement, pursuant to which TriAd is clearly entitled to reimbursement of all reasonable attorneys' fees incurred in defense of this lawsuit.

The plain language of the Advertiser Agreement mandates that Zeta defend and indemnify TriAd. Zeta, however, twists the words and intent of the Advertiser Agreement and contends that the indemnity provision does not apply to "alleged" violations, and that actual violations of the TCPA must be proven before Zeta's duty to defend and indemnify is triggered. This is absurd and commercially unreasonable. Further, the canons of contract interpretation do not support such an interpretation of the Advertiser Agreement.

Even if the Court finds the language of the Advertiser Agreement to be ambiguous, any ambiguity must be construed against the drafter, Zeta. Furthermore, for nearly two years Zeta's course of conduct confirmed its acceptance of its indemnity obligations. Zeta sent correspondence to TriAd accepting its obligations. It admitted its obligations in its Answer to the crossclaims filed by TriAd. It acknowledged and accepted the indemnity obligations in executing a Joint Defense Agreement. Zeta cannot now be permitted to disavow its indemnification obligations after nearly two years of conduct leading TriAd to believe that Zeta would honor its contract and defend and indemnify TriAd.

Finally, the lodestar method of calculating attorneys' fees supports the fact that the attorneys' fees incurred by TriAd in defending this litigation are reasonable.

Counsel for TriAd defended this litigation for nearly three years.  For the first year of the litigation, counsel for TriAd was the only defense counsel in this matter.  TriAd opposed three motions filed by plaintiff.  Counsel for TriAd appeared for an in-person conference with the Court and numerous teleconferences with the court.  Counsel for TriAd drafted discovery responses to plaintiff and analyzed plaintiff's discovery responses.  Both the hours expended and the rates charged were reasonable.  As such, TriAd is entitled to full reimbursement of all attorneys' fees incurred in its defense in this litigation.  For the reasons set forth more fully below, TriAd respectfully submits its motion for summary judgment must be granted.

## STATEMENT OF FACTS

This matter arises out of a class action lawsuit filed by plaintiff, Norma Vazquez, individually and on behalf of all others similarly situated, against TriAd for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA") on September 30, 2015. See Defendant TriAd Media Solutions, Inc.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("SUMF") ¶ 1. On November 24, 2015, TriAd answered the Complaint, denying the allegations therein. SUMF ¶ 2.

On January 8, 2016, TriAd, through counsel, contacted Zeta and Spire to demand defense and indemnity with regard to the Class Action Complaint. SUMF ¶ 7.[1] TriAd contracted with Zeta and Spire to provide services in connection with advertising campaigns TriAd conducted for its clients. This "Advertiser Agreement," executed on June 12, 2014, sets forth the terms of a contract between Spire as the "Agency" and TriAd as the "Advertiser." SUMF ¶ 5. The Advertiser Agreement includes the following Indemnification provision:

> **Indemnification by Agency.** Agency [Spire] hereby agrees to indemnify, defend and hold harmless Advertiser [TriAd] and its officers, directors, agents, and employees from and against all claims, actions, liabilities, losses, expenses, damages, and costs (including, without limitation, reasonable attorneys' fees) that may at any time be incurred by any of them by

---

[1] Spire is a wholly owned subsidiary of Zeta, Doc. 48, and Zeta and Spire responded to TriAd's demand for defense and indemnification as one. See, e.g., SUMF ¶ 7.

> reason of any claims, suits or proceedings . . . (c) arising
> from any violation of the CAN SPAM Act of 2003, the
> TCPA, or any other laws, rules and regulations
> governing deceptive trade practices and online or
> telephonic marketing or advertising; . . .

SUMF ¶ 5.   In its January 8, 2016 correspondence, TriAd demanded defense and

indemnity pursuant to the Advertiser Agreement.  SUMF ¶ 7.

By correspondence dated February 18, 2016, Zeta accepted tender of the claim

against TriAd in this lawsuit and acknowledged its "indemnity obligation."  SUMF ¶

8.  Specifically, the letter stated:

> Zeta Interactive Corp. ("Zeta") accepts this indemnity
> obligation.  However, out of an abundance of caution, Zeta
> hereby reserves all rights and limitations on its indemnity
> obligation provided by the Agreement.

Finally, the letter asserted that Zeta is "entitled to control the defense" of the claims

and advised that Newman Du Wors LLP had been retained to represent Zeta.  SUMF

¶ 8.

Counsel for Zeta engaged in teleconferences with counsel for TriAd as

confirmed in correspondence dated April 27, 2016.  The correspondence from counsel

for TriAd states:

> Accordingly, we take this opportunity to confirm Zeta's
> acceptance and acknowledgment of its indemnity and
> defense obligations. . . . Although Mr. Vine's letter
> indicates that Mr. Du Wors will represent TriAd in the
> Action, as a result of our subsequent conversations with
> you, it was agreed that Mr. Du Wors would represent Zeta,

<u>and that Bressler, Amery & Ross, P.C. ("BA&R") would
continue to represent TriAd in the Action.</u>

> We would also like to confirm a process for the submission
> of TriAd's bills for defense costs incurred in the Action
> pursuant to Zeta's indemnity and defense obligations.
> Defense costs incurred by TriAd through March 31, 2016
> total $66,231.30. . . . We will provide you with copies of
> the prior bills and forward future bills for the
> representation of TriAd in the Action for review and
> payment by Zeta once you confirm that this process is
> acceptable.

SUMF ¶ 9 (emphasis added).

Plaintiff filed a First Amended Class Action Complaint to include Zeta and
Spire as defendants on June 27, 2016.  SUMF ¶ 11.  In the First Amended Class Action
Complaint, plaintiff alleged "[i]n an effort to market educational institutions, Triad,
Zeta, and Spire sent unsolicited text messages to the wireless telephones of Plaintiff
and each of the members of the Class without prior express written consent in violation
of the [TCPA.]"  SUMF ¶ 12.  Plaintiff further alleged "[t]here are thousands of
consumers who have been damaged by Defendants' wrongful conduct[.]"  SUMF ¶
13.

John Du Wors, Esq., counsel for Zeta, further confirmed acceptance of Zeta's
indemnity obligations by correspondence dated June 27, 2016.  Specifically, the
correspondence sets forth the following three "conditions of indemnity":

> First, my client requires that it be allowed to control the
> defense and settlement of this matter.  That means, my
> client, through me, will direct your litigation activities, and

6

> you and I will coordinate at every step of the litigation.  For
> the most part, my law firm will take the lead on defense
> efforts.  The obvious limitation on this requirement is that
> your client cannot have its rights jeopardized, and we do
> not ask that your law firm take forbear [sic] on any action
> necessary to protect your client's rights and avoid
> prejudice.
>
> Second, your law firm's billing must be reasonable.  And
> we should engage in semi-frequent (at minimum,
> quarterly) discussions about budgeting for our defense in
> this case.  My client's insurance carrier will also have a
> voice in determining reasonableness of fees and forward
> looking budgets, pursuant to my client's obligations under
> its insurance policy.  With respect to your firm's current
> invoices, I propose that we convene a teleconference on
> July 5, involving my client's in house counsel, to discuss
> whether any discount should be imposed and agree on an
> amount to be paid in full by my client.
>
> Third, we must execute a joint defense agreement to
> protect the privileged nature of our communications.  My
> office will prepare that agreement and transmit a proposed
> draft to you.

SUMF ¶ 10.  Finally, the letter acknowledges that Zeta had received TriAd's attorneys'

fees bills but that Zeta "expressed concerns about <u>portions</u> of those invoices."  <u>Id.</u>

(emphasis added).

TriAd once again contacted Zeta on July 13, 2016, for reimbursement of its legal

fees.  SUMF ¶ 14.  The correspondence sets forth:

> With regard to BA&R's invoices and rates, we will
> provide you with copies of our outstanding fees bills [sic]
> for payment by Zeta/Spire once we agree on a form of
> Joint Defense Agreement.  We request that Zeta/Spire
> promptly reimburse BA&R in full for all defense costs to

> date, which we will then distribute to TriAd and its insurer
> for the prior payments that each has made or will be
> making with regard to these invoices.  Future invoices will
> be submitted to you for payment by Zeta/Spire. . . . We
> fully intend to coordinate our efforts with you in the
> defense of the case and are agreeable to submitting
> reasonable general periodic budgets of anticipated services
> for Zeta/Spire's use with its insurance carrier. . . . Note,
> however, that it is TriAd's position that while Zeta/Spire
> may intend to seek reimbursement from its insurer of the
> defense costs and indemnity payments it makes on
> TriAd's behalf, Zeta/Spire's indemnity  obligation to
> TriAd is not dependent upon Zeta/Spire's insurance
> coverage or payment by its insurance carrier.

SUMF ¶ 14.  The July 13, 2016 correspondence further stated that TriAd's Answer to

the Amended Complaint was due on August 10, 2016, and that a Joint Defense

Agreement must be executed and outstanding defense costs reimbursed by August 5,

2016, or TriAd would need to file crossclaims for indemnity against Zeta with its

Answer on August 10, 2016 to preserve its rights.  SUMF ¶ 15.

On August 10, 2016, TriAd filed an Answer denying the allegations of the First

Amended Complaint and asserting crossclaims for contribution and indemnification

against Zeta and Spire.  SUMF ¶ 16.  Specifically, Count One of TriAd's crossclaims

asserts a common law cause of action for contribution and indemnity.  Count Two of

TriAd's crossclaims asserts a claim for contractual indemnification and hold harmless

based on defendants' June 12, 2014 Advertiser Agreement.  Id.

Zeta and Spire admitted in their Answer to TriAd's crossclaims that "TriAd is

entitled to indemnification as set forth in the June 12, 2014 Advertiser Agreement . . ."

8

SUMF ¶ 19.  Zeta and Spire specifically admitted "that certain obligations exist under

the June 12, 2014 Advertiser Agreement between Spire and TriAd to pay certain fees,

costs and expenses incurred by or on behalf of TriAd in connection with the defense

of the above-captioned action."  SUMF ¶ 20.  On March 28, 2017, counsel for Zeta

executed the Joint Defense Agreement ("JDA").  The JDA states:

> Zeta and Spire have accepted tender of TriAd's defense in
> the Action, and have filed an Answer to TriAd's
> Crossclaim wherein Zeta and Spire have acknowledged,
> affirmed and accepted their obligation to TriAd under
> paragraph 11 of the June 12, 2014 Advertiser Agreement
> by and between Zeta, Spire and TriAd; . . .

SUMF ¶ 21.

On April 6, 2017, May 19, 2017, July 31, 2017 and September 5, 2017, Bressler

provided invoices for legal services rendered to TriAd in defense of the Class Action

Complaint from October 2015 through July 2017.  The total of the invoices submitted

is $210,156.40.  SUMF ¶ 23.  Between August 1, 2017 and April 30, 2018, TriAd

incurred legal fees invoices from BAR in the amount of $22,152.70.  SUMF ¶ 24.

Accordingly, the total indemnification claim (excluding costs of this motion) is

$232,309.10.  To date, Zeta has failed to reimburse TriAd for any defense costs.

SUMF ¶ 24.

After receipt of TriAd's attorneys' fees bills, for a period of months Zeta

communicated to TriAd concerns regarding the amount of those invoices.

Additionally, Zeta's counsel explained that Zeta's insurance carrier "was slow in

responding" to TriAd's attorneys' fees bills but that a settlement position would be forthcoming. SUMF ¶ 25. At no time prior to October 2, 2017 did Zeta disavow its indemnity and defense obligations or contend that the indemnification provision in the Advertiser Agreement did not apply. Id.

On October 2, 2017, Zeta and Spire served Supplemental Responses to TriAd Media Solutions, Inc.'s First Set of Interrogatories. SUMF ¶ 26. In those responses, Zeta and Spire, for the first time, disavowed their obligation to defend and indemnify TriAd with respect to the claims asserted in this action. Id. Specifically, Zeta and Spire contended that: (1) the indemnity provision of the Advertiser Agreement does not cover the "unsubstantiated TCPA claims" asserted by plaintiff Vazquez; (2) that their reservation of rights permitted their belated disavowal of the agreement to defend and indemnify; (3) that TriAd was not entitled to independent counsel as there was no actual conflict; and (4) that the fees sought by TriAd were unreasonable. SUMF ¶ 26.

TriAd was the only defendant in this matter for the first year that it was pending. Thereafter, Zeta and Spire were joined as defendants and the litigation continued for nearly two additional years. As agreed to by Zeta and Spire, Bressler, Amery & Ross continued to represent TriAd throughout the course of the litigation through, and including, to the time of the settlement with plaintiff. TriAd now brings this motion for summary judgment seeking reimbursement of the attorneys' fees and costs expended in defense of the TCPA claims brought by plaintiff Vazquez. TriAd

respectfully submits that Zeta and Spire are obligated pursuant to the terms of the Advertiser Agreement to reimburse it for these attorneys' fees and costs.  Moreover, TriAd submits that the attorneys' fees and costs submitted to Zeta and Spire for payment were reasonable and necessary.  Accordingly, TriAd seeks summary judgment and an Order directing that Zeta and Spire reimburse it for all attorneys' fees and costs incurred.

## <u>LEGAL ARGUMENT</u>

Summary judgment is appropriate as to TriAd's crossclaims for indemnification against Zeta.  This Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In determining whether a material fact is in genuine dispute, the Court may not weigh the evidence or make credibility determinations, but must instead construe all evidence and inferences in the light most favorable to the non-moving party.  <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  When the moving party has met its initial burden, however, the opposing party must do more than raise some "metaphysical doubt as to material facts"; instead, it must show that there is "sufficient evidence for a jury to return a verdict in favor of the non-moving party."  <u>Boyle</u>, 139 F.3d at 393.

As set forth below, TriAd is entitled to summary judgment on its crossclaims for indemnity against Zeta as a matter of law.

12

**POINT I**

**ZETA IS CONTRACTUALLY OBLIGATED TO REIMBURSE TRIAD FOR REASONABLE ATTORNEYS' FEES INCURRED DEFENDING PLAINTIFF'S TCPA LAWSUIT.**

New York law[2] has long recognized that companies may bind themselves to indemnification by both contract and implication.  See, e.g., Mas v. Two Bridges Associates, 554 N.E.2d 1257, 1262 (N.Y. 1990).  The New York Court of Appeals has made clear that a "contract that provides for indemnification will be enforced as long as the intent to assume such a role is sufficiently clear and unambiguous." Bradley v. Earl B. Feiden, Inc., 864 N.E.2d 600, 605 (N.Y. 2007) (internal marks and citations omitted); see also Weissman v. Sinorm Deli, 669 N.E.2d 242, 247 (N.Y.1996) ("A promise to assume an obligation in an indemnity, however, should not be found unless it can be clearly implied from the language and purpose of the entire agreement.")

When the parties contest the meaning of a written indemnification provision, the determination of their rights and liabilities under the disputed provision is a

---

[2] Section 18 of the Advertiser Agreement states that the Agreement "shall be governed by and construed under the laws of the State of New York[.]"  Tallmadge Aff., Exhibit A.  Because "New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice,'" Collins v. Mary Kay, Inc., 874 F.3d 176, 183-84 (3d. Cir. 2017) (citing Instructional Sys., Inc. v. Comput. Curriculum Corp., 614 A.2d 124, 133 (N.J. 1992)), the laws of the State of New York control the interpretation and construction of Section 11.

question of contract interpretation to be decided as a matter of law.  See, e.g., White v. Cont'l Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007).  And so, like any contractual clause, courts construe the scope of an indemnification provision using the specific wording of the written agreement.  See, e.g., Hooper Assocs. v. AGS Computers, 548 N.E.2d 903, 905 (N.Y. 1989); McCleary v. City of Glens Falls, 819 N.Y.S.2d 609, 611 (3d Dept. 2006).  Because an "indemnity clause must be interpreted to give effect to its primary purpose," Carter-Wallace, Inc. v. Tambrands Inc., 744 N.Y.S.2d 11, 12 (1st Dept. 2002), courts must "be careful not to interpret a contracted indemnification provision in a manner that would render it meaningless," Bradley, 864 N.E.2d at 605 (citing Levine v. Shell Oil Co., 269 N.E.2d 799 (N.Y. 1971)). Courts should be equally cautious not to interpret such a provision in a manner that would "produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties."  Lipper Holdings, LLC v. Trident Holdings LLC, 766 N.Y.S.2d 561, 562 (1st Dept. 2003) (internal citations omitted).

Here, the applicable well-established canons of contract interpretation, as informed by New York decisional law, are easily distilled into two simple and controlling principles: (1) the words the parties use have their ordinary meaning; and (2) each word should be read considering the entire agreement, with the goal of harmonizing different provisions, avoiding conflict, and giving effect to the parties' intent in executing the contract.  So guided, a review of Section 11 compels the

14

conclusion that, as a matter of law, Zeta is obligated to reimburse TriAd for the legal expenses it incurred defending plaintiff's TCPA lawsuit.

### A. Under Section 11's Unambiguous Terms, Zeta Agreed To Reimburse TriAd For All Reasonable Attorneys' Fees Arising From TCPA Lawsuits.

The cardinal rule of contract law is that contracts must be enforced as written. See W.W.W. Assoc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990). For "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent," and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing[.]" Greenfield v. Philles Records, 780 N.E.2d 166, 170 (N.Y. 2002). "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." Reiss v. Fin. Performance Corp., 764 N.E.2d 958, 961 (N.Y. 2001); see also Muzak Corp. v. Hotel Taft Corp., 133 N.E.2d 688, 690 (N.Y. 1956) ("[N]o provision of a contract should be left without force and effect."). Unless the language at issue is ambiguous—that is, susceptible to two reasonable but conflicting meanings—the plain meaning of the contract's written terms govern. See Greenfield, 780 N.E.2d at 171. Applying these principles to the governing contract herein, this Court should conclude that Section 11 requires that Zeta reimburse TriAd for all reasonable attorneys' fees it incurred defending plaintiff's TCPA lawsuit.

In Section 11 of the Advertiser Agreement, Zeta agreed to indemnify TriAd. Section 11 states, in pertinent part, as follows:

> [Zeta] agrees to indemnify, defend and hold harmless [TriAd] . . . from and against all claims, actions, liabilities, losses, expenses, damages, and costs (including, without limitation, reasonable attorneys' fees) that may at any time be incurred . . . by reason of any claims, suits or proceedings . . . (c) arising from any violation of . . . the TCPA[.]

SUMF ¶ 5. TriAd contends that, by operation of Section 11's plain meaning, the filing of plaintiff's TCPA Complaint triggered Zeta's Section 11 obligations to "indemnify, defend and hold [TriAd] harmless" because the Complaint is a "claim, suit or proceeding . . . arising from [a] violation of the TCPA."

By contrast, Zeta now contends that Section 11 requires an affirmative finding of a TCPA violation before it is triggered. See SUMF ¶ 26. This is so, Zeta avers, because the contract does not require Zeta to indemnify TriAd for "alleged" violations of the TCPA, thereby signifying that a "proven" TCPA violation is a necessary predicate to Zeta's Section 11 obligations. Since plaintiff's TCPA suit was settled without an affirmative finding of a TCPA violation, Zeta contends that it is not liable to reimburse TriAd for the reasonable attorneys' fees TriAd incurred defending the TCPA Complaint. As set forth below, however, TriAd's straightforward interpretation represents the only plausible and common-sense interpretation of Section 11's plain terms.

16

Section 11 states that "Zeta agrees to indemnify, defend, and hold [TriAd] harmless . . ." It sets forth Zeta's threefold duties: to indemnify, defend, and hold TriAd harmless. The respective definitions clarify Zeta's obligations: to indemnify is to "reimburse [TriAd] for a loss suffered because of [Zeta's] act," to defend is to "deny, contest, or oppose (an allegation or claim)", and to hold TriAd harmless is to "absolve [TriAd] from any responsibility for damage or other liability arising from the transaction." BLACK'S LAW DICTIONARY (7th ed. 1999), 732, 429, 737. The use of the conjunction "and" indicates that Zeta's duties to indemnify and defend TriAd are separate and distinct from each other, and is consistent with New York case law recognizing the significance of such a distinction. See, e.g., Technicon Electronics Corp. v. American Home Assurance Co., 542 N.E.2d 1048, 1050 (N.Y. 1989) ("The duty to defend insureds—long recognized as broader than that to indemnify—is derived from the allegations of the complaint and the terms of the policy."). The language that immediately follows this phrase describes precisely when Zeta's obligations thereunder will arise.

Section 11 obligates Zeta in the event of "any claims, suits or proceedings. . . arising from any violation of . . . the TCPA." The terms "claims," "suits," and "proceedings" all describe inherently pre-judgment events: "Claim" means a "*demand* for money or property to which one *asserts* a right" and the "aggregate of operative facts giving rise to a right *enforceable by a court*." BLACK'S LAW

DICTIONARY 240 (7th ed. 1999) (emphases added). "Proceeding" means "[a]ny procedural means for seeking redress from a tribunal or agency." Id. at 1221. And "suit" means "[a]ny proceeding by a party or parties against another in a court of law." Id. at 1448.

Read with those definitions, it is clear that this phrase contemplates the initiation of the judicial process to seek redress for a violation of the TCPA that the initiating party believes it has suffered. Because the mere assertion of a legal violation does not signify that a court will find that the alleged violation did, in fact, occur, the only plausible reading of the phrase "by reason of any claims, suits or proceedings . . . arising from any violation of . . . the TCPA" is that Zeta's dual obligations to defend and indemnify TriAd are triggered by the filing of lawsuits that *allege* violations of the TCPA.

Moreover, it is apparent from Zeta's conduct that it viewed its obligation as being triggered by the assertion of the TCPA claims. Indeed, Zeta accepted its indemnity obligations, SUMF ¶ 8, confirmed its acceptance subject to three conditions (not including proof of an actual TCPA violation), SUMF ¶ 10, and admitted its obligation in its Answer to TriAd's Counterclaim, Doc. 50, and in a Joint Defense Agreement, SUMF ¶ 21. Moreover, Zeta received TriAd's legal bills, indicated some "concerns" about portions of the bills, and referred the bills to its

insurer.  SUMF ¶ 25.  Only at the last moment when its discovery responses were due did Zeta belatedly disavow its contractual obligation.

Whether a contract is ambiguous is a question of law that may be decided on summary judgment.  See W.W.W. Assocs., 566 N.E.2d at 642.  No ambiguity exists if the language at issue has "a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y. 1978).  Courts may not find ambiguity where an interpretation urged by one party would "strain[] the contract language beyond its reasonable and ordinary meaning." Bethlehem Steel Co. v. Turner Construction Co., 141 N.E.2d 590, 593 (N.Y. 1957).  Rather, an ambiguity exists only "where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement[.]" Law Debenture Tr. Co. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010).

Section 11's language does not suggest more than one meaning when viewed objectively in light of as explained above well-established principles of contract interpretation.  The sole plausible meaning is unequivocal and unambiguous: upon the filing of plaintiff's TCPA lawsuit, Zeta became obligated to both defend and

indemnify TriAd from the  costs—including reasonable attorneys' fees—associated with said lawsuit, irrespective of liability.

It is axiomatic that "where a particular interpretation [of an agreement] would lead to an absurd result, the courts can reject such a construction in favor of one which would better accord with the reasonable expectations of the parties."  Reape v. New York News, Inc., 504 N.Y.S.2d 469, 470 (2d Dept. 1986).  The New York Court of Appeals has expounded on this principle as follows:

> [I]n searching for the probable intent of the parties, lest form swallow substance, our goal must be to accord the words of the contract their fair and reasonable meaning.  Put another way, the aim is a practical interpretation of the expressions of the parties to the end that there be a realization of [their] reasonable expectations.  Concordantly, as previously indicated, not merely literal language, but whatever may be reasonably implied therefrom must be taken into account.

Sutton v. East River Sav. Bank, 435 N.E.2d 1075, 1078 (N.Y. 1982) (internal citations omitted); River View Assocs. v. Sheraton Corp. of Am., 306 N.Y.S.2d 153, 156 (1st Dept. 1969) ("[P]arties to an agreement are presumed to act sensibly in regard to it and an interpretation that produces an absurdly harsh result is to be avoided[.]").

Zeta's contention that the duty to defend and indemnify was not triggered by the allegations of the TCPA Complaint would lead to an absurd result.  See SUMF ¶ 26.  If, as Zeta contends, a violation of the TCPA must first be proven, Zeta would have no duty to defend TriAd.  A violation would only be proven at the conclusion

of proceedings when defense would no longer be necessary.  To read the contract with this interpretation would nullify the duty to defend and lead to an absurdly harsh result.

Counsel for Zeta indicated in correspondence to TriAd's counsel, Zeta "conditions of indemnity."  SUMF ¶ 10.  Counsel stated:

> My assumption is that your client would like clear confirmation that my client is accepting your client's indemnity demand, notwithstanding my client's stated reservation of rights.  By this letter, I am providing that confirmation, and also setting forth my client's conditions of indemnity.

SUMF ¶ 10.  The first condition was that Zeta be allowed to control the defense of the litigation and that its counsel "take the lead."  (Note the implicit agreement that TriAd would have separate counsel.)   The second condition was that fees be reasonable and budgeted.  The third and final condition was the execution of a joint defense agreement.  All of these conditions were met by TriAd.  Zeta took the lead in the defense and eventually settled the TCPA claims with plaintiff.  TriAd signed a joint defense agreement and then submitted its legal bills to Zeta.  After months of delay, Zeta did an about-face, disavowed its indemnity obligations, and refused to reimburse TriAd for the attorneys' fees and costs incurred in defending the TCPA litigation.

TriAd respectfully submits that, as a matter of law, Zeta is contractually obligated to indemnify it pursuant to the terms of the Advertiser Agreement.

21

Therefore, TriAd submits that summary judgment should be granted and Zeta ordered to pay TriAd's reasonable attorneys' fees and costs.

**B.   Even If The Court Concludes That Section 11 Is Ambiguous, The Doctrine of *Contra Proferentem* And Zeta's Course of Conduct Require that this Court Construe Any Ambiguity Against Zeta.**

It is axiomatic that any ambiguities in a contract are to be construed against the drafter.  See Albany Sav. Bank, F.S.B. v. Halpin, 117 F.3d 669, 674 (2d Cir. 1997) (explaining that "New York contract law includes the rule that ambiguities in contracts should be construed against the drafter").  Here, Zeta drafted the Advertiser Agreement and had the opportunity to limit the scope of the indemnification clause by including the term "proven" to describe violations of the TCPA.  Zeta's interpretation of the indemnity clause to apply only to "proven" violations would nullify the rest of the provision, particularly the duty to defend.  This would be an absurd result and one contrary to the overall nature and intent of the provision.  Therefore, should the Court find the language of the contract to be ambiguous, the doctrine of *contra proferentem* dictates that the ambiguity be construed against its drafter, Zeta.  See Jacobson v. Sassower, 489 N.E.2d 1283, 1284 (N.Y. 1985).

Furthermore, since execution of the Advertiser Agreement on June 12, 2014, Zeta consistently conducted itself in the context of this litigation as if the indemnity provision of the Advertiser Agreement applied to the TCPA Complaint, and led TriAd to believe the same.  When TriAd originally tendered the claim to Zeta, it accepted

tender of the claim against TriAd in this lawsuit and acknowledged its "indemnity obligation" while including reservation of rights language.  SUMF ¶ 8.  Counsel for Zeta then engaged in teleconferences with counsel for TriAd further discussing the indemnity obligation.  Correspondence from counsel for TriAd, Kenneth J. Cesta, Esq., dated April 27, 2016 confirmed these conversations.  Mr. Cesta further established a process for reimbursement of legal fees incurred by TriAd:

> We would also like to confirm a process for the submission of TriAd's bills for defense costs incurred in the Action pursuant to Zeta's indemnity and defense obligations. Defense costs incurred by TriAd through March 31, 2016 total $66,231.30. . . . We will provide you with copies of the prior bills and forward future bills for the representation of TriAd in the Action for review and payment by Zeta once you confirm that this process is acceptable.

SUMF ¶ 9.  Zeta did not indicate that it had no intention of reimbursing TriAd for the attorneys' fees incurred in defense of this action.  Rather, John Du Wors, Esq., counsel for Zeta, further confirmed acceptance of Zeta's indemnity obligations by correspondence dated June 27, 2016.  Specifically, the correspondence sets forth the following three "conditions of indemnity":

> First, my client requires that it be allowed to control the defense and settlement of this matter.  That means, my client, through me, will direct your litigation activities, and you and I will coordinate at every step of the litigation.  For the most part, my law firm will take the lead on defense efforts.  The obvious limitation on this requirement is that your client cannot have its rights jeopardized, and we do not ask that your law firm take forbear [sic] on any action

> necessary to protect your client's rights and avoid prejudice.
>
> Second, your law firm's billing must be reasonable. And we should engage in semi-frequent (at minimum, quarterly) discussions about budgeting for our defense in this case. My client's insurance carrier will also have a voice in determining reasonableness of fees and forward looking budgets, pursuant to my client's obligations under its insurance policy. With respect to your firm's current invoices, I propose that we convene a teleconference on July 5, involving my client's in house counsel, to discuss whether any discount should be imposed and agree on an amount to be paid in full by my client.
>
> Third, we must execute a joint defense agreement to protect the privileged nature of our communications. My office will prepare that agreement and transmit a proposed draft to you.

SUMF ¶ 10. Here, Zeta clearly indicates that it will reimburse TriAd for the reasonable attorneys' fees incurred. The correspondence specifically addresses the desire for oversight to verify the reasonableness of the fees. There can be no other reading of the June 27, 2016 correspondence other than Zeta intended to reimburse TriAd for reasonable attorneys' fees incurred in the defense of the TCPA Complaint.

TriAd once again contacted Zeta on July 13, 2016, to discuss reimbursement of its legal fees. SUMF ¶ 14. The correspondence sets forth:

> With regard to BA&R's invoices and rates, we will provide you with copies of our outstanding fees bills for payment by Zeta/Spire once we agree on a form of Joint Defense Agreement. . . . Future invoices will be submitted to you for payment by Zeta/Spire. . . . We fully intend to coordinate our efforts with you in the defense of the case

24

> and are agreeable to submitting reasonable general
> periodic budgets of anticipated services for Zeta/Spire's
> use with its insurance carrier. . . . Note, however, that it is
> TriAd's position that while Zeta/Spire may intend to seek
> reimbursement from its insurer of the defense costs and
> indemnity payments it makes on TriAd's behalf,
> Zeta/Spire's indemnity obligation to TriAd is not
> dependent upon Zeta/Spire's insurance coverage or
> payment by its insurance carrier.

SUMF ¶ 14.  TriAd therefore once again reiterated to Zeta its understanding that Zeta

intended to reimburse TriAd for the attorneys' fees incurred and agreed to submit

budgets for future expenses.

Zeta's Answer to TriAd's crossclaims for indemnity further confirm that Zeta

accepted its indemnity obligations.  Specifically, the Answer admits: "TriAd is entitled

to indemnification as set forth in the June 12, 2014 Advertiser Agreement . . ."  SUMF

¶ 19.  Zeta and Spire specifically admitted "that certain obligations exist under the June

12, 2014 Advertiser Agreement between Spire and TriAd to pay certain fees, costs and

expenses incurred by or on behalf of TriAd in connection with the defense of the

above-captioned action."  SUMF ¶ 20.  Zeta therefore explicitly agreed that it was

obligated to pay fees incurred by TriAd.

Zeta also executed a Joint Defense Agreement ("JDA") that confirmed its

indemnity obligations. The JDA states:

> Zeta and Spire have accepted tender of TriAd's defense in
> the Action, and have filed an Answer to TriAd's
> Crossclaim wherein Zeta and Spire have acknowledged,
> affirmed and accepted their obligation to TriAd under

>paragraph 11 of the June 12, 2014 Advertiser Agreement
>by and between Zeta, Spire and TriAd; . . .

SUMF ¶ 21.   TriAd and Zeta therefore agreed to a joint defense of the TCPA Complaint because Zeta accepted its indemnity obligations and confirmed to TriAd that Zeta would reimburse TriAd for all reasonable attorneys' fees incurred in defense of the TCPA Complaint.   After the JDA was executed, TriAd periodically produced invoices for legal services rendered to TriAd in defense of the TCPA Complaint. Specifically, TriAd forwarded invoices on April 6, 2017, May 19, 2017, July 31, 2017 and September 5, 2017.   Zeta failed to respond to any of these four communications with a reversal of its position that it accepted its obligation to defend and indemnify TriAd in this matter.

It was not until October 2, 2017, approximately 20 months after accepting tender of TriAd's claim, that Zeta asserted, for the first time, that it was not obligated to indemnify TriAd in this action.   SUMF ¶ 26.   Specifically, Zeta contended that: (1) the indemnity provision of the Advertiser Agreement did not apply to the unsubstantiated TCPA claims of plaintiff; (2) the reservation of rights permitted the belated disavowal of the acceptance of the indemnity obligation; (3) that TriAd was not entitled to separate counsel; and (4) that TriAd's attorneys' fees were not reasonable.   SUMF ¶ 26.   As set forth above, the construction of the contract language to apply only to proven TCPA claims is entirely without merit.   Furthermore, for nearly two years, Zeta's course of conduct belied its belated new interpretation of the

Advertiser Agreement.  Zeta induced TriAd to rely on its acceptance of the tender of the claim and its reassurances that it was defending and indemnifying TriAd in this matter.  Zeta took the lead in defense of the action and, when the settlement was completed, suddenly changed its reading of the contract.  Zeta's course of conduct is indicative of its actual interpretation of the indemnity provision.  Further, Zeta's course of conduct should preclude it from this belated attempt to avoid its contractual obligations.  See, e.g., Wallace v. BSD-M Realty, LLC, 36 N.Y.S.3d 884, 887 (2d Dept. 2016); Airco Alloys Div., Airco, Inc. v. Niagra Mohawk Power Corp., 430 N.Y.S.2d 179, 187 (4th Dept. 1980).

## POINT II

## THE ATTORNEYS' FEES INCURRED BY TRIAD IN DEFENSE OF THE TCPA COMPLAINT ARE REASONABLE.

Zeta is obligated to reimburse TriAd for its reasonable attorneys' fees. Determination of the reasonableness of attorneys' fees is calculated using the lodestar method. Nager v. Teachers' Retirement Sys. of the City of N.Y., 869 N.Y.S.2d 492, 493 (1st Dept. 2008). The United States Court of Appeals for the Second Circuit has stated: "Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" Millea v. Metro-North R.R., 658 F.3d 154, 166 (2d Cir. 2011). The Court should therefore apply the lodestar method in this case to determine the reasonableness of the fees incurred by TriAd.

The lodestar method is applied as follows: multiply the hours reasonably expended by a reasonable hourly rate to determine the Lodestar fee, and adjust the Lodestar fee as needed based on nine factors. See Rahmey v. Blum, 466 N.Y.S.2d 350, 357-8 (2d Dept. 1983). In this case, Zeta objects to the fees incurred on the grounds that Zeta's counsel primarily handled the defense of the claim. However, that argument ignores the fact that Zeta's counsel was not involved in the litigation until an entire year had passed. See SUMF ¶ 4. During that first year of litigation,

counsel for TriAd independently handled the defense of this class action lawsuit with the potential for significant exposure to TriAd.  In addition to filing an Answer, TriAd handled all initial discovery with plaintiff including drafting TriAd's Corporate Disclosure Statement, drafting opposition to plaintiff's motion to strike TriAd's affirmative defenses, negotiation of the Joint Discovery Plan, drafting TriAd's Initial Disclosures, appearance at the Initial Pretrial Conference, drafting TriAd's Responses to Plaintiff's Request for Admissions, negotiation of Joint Discovery Confidentiality Order, drafting TriAd's Answers to Plaintiff's Interrogatories, Responses to Plaintiff's Request for Production of Documents and Supplemental Initial Disclosures, and appearance for two telephonic conferences with the Court.  See SUMF ¶ 4.

Even after Zeta was named as a defendant in this matter and filed its Answer, counsel for TriAd continued to represent the interests of TriAd in coordination with counsel for Zeta pursuant to the Joint Defense Agreement.  See SUMF ¶ 28. Specifically, counsel for TriAd drafted TriAd's Answers to Plaintiff's Second Set of Interrogatories and Responses to Plaintiff's Second Request for Production of Documents, negotiated the First Amended Joint Discovery Plan, appeared for six telephonic conferences with the Court, drafted opposition to plaintiff's second motion to strike affirmative defenses of TriAd, drafted opposition to plaintiff's motion to compel discovery from TriAd, negotiated the Protective Order, and negotiated settlement with plaintiff alongside counsel for Zeta.  See SUMF ¶ 26.

Counsel for TriAd has been defending this action for nearly three years.  For the first year, counsel for TriAd was the only defense counsel of record.  The number of hours counsel for TriAd billed to the defense of this matter are reasonable and well documented in the invoices submitted herewith.  See SUMF ¶ 21.  Bressler is also entitled to fees for its legal work drafting this motion.  See Rahmey, 466 N.Y.S.2d at 357 ("Hours reasonably spent by counsel in preparing the fee application and in litigating a fee award are also compensable[.]").

The hourly rate charged by counsel for TriAd is reasonable based on the services provided, the experience of the attorneys handling the matter, and the market rate.  Additionally, counsel for TriAd applied a 15% discount to its normal rates as a courtesy to its client.  Counsel disclosed its hourly rate to Zeta in its July 13, 2016 correspondence.  See SUMF ¶ 14.  Zeta did not object to the rates.  Furthermore, the rates are clearly indicated on the invoices provided.  Therefore, the lodestar is determined by multiplying the hours reasonably expended by the reasonable hourly rate to determine that Zeta is obligated to reimburse TriAd $232,309.10 for the legal services rendered in defense of TriAd from October 2015 through April 2018.  TriAd is also entitled to reimbursement for all legal fees incurred in the drafting of this motion.

Finally, taking into account the factors applied by the federal circuit courts, there is no reason to adjust the lodestar fee in this matter.  Those factors include:

(1)   the novelty and difficulty of the questions presented;

(2)   the skill requisite to perform the legal services properly;

(3)   the preclusion of other employment by the attorney due to acceptance of the case;

(4)   whether the fee is fixed or contingent;

(5)   time limitations imposed by the client or the circumstances;

(6)   the nature and length of the professional relationship with the client;

(7)   the amount involved and the results obtained;

(8)   the undesirability of the case; and

(9)   awards in similar cases.

Rahmey, 466 N.Y.S.2d at 358.  As stated above, counsel for TriAd has been involved in this matter for nearly three years.   Counsel for TriAd has a long-standing relationship with TriAd's insurer, who retained counsel on TriAd's behalf.   This matter had the potential for significant exposure to TriAd, particularly given the allegations that thousands of consumers were damaged and the potential of certifying a class of plaintiffs.  Counsel for TriAd successfully defended TriAd, and its fees must be reimbursed by the indemnifying party, Zeta.  Zeta is obligated to defend and indemnify TriAd for the claims asserted in the TCPA Complaint.  TriAd is therefore entitled to reimbursement for its reasonable attorneys' fees.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant, TriAd Media Solutions, Inc., respectfully submits that its Motion for Summary Judgment should be granted.

**BRESSLER, AMERY & ROSS, P.C.**
Attorneys for Defendant
 TriAd Media Solutions, Inc.


DATED:  September 26, 2018          By:_____/s/Mark M. Tallmadge_____
                                         Mark M. Tallmadge

32