UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORMA VAZQUEZ, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

TRIAD MEDIA SOLUTIONS, INC., ZETA INTERACTIVE CORPORATION, and SPIRE VISION LLC,

        Defendants.

OPINION
Civ. No. 15-7220

**Walls, Senior District Judge**

Cross-claim plaintiff TriAd Media Solutions, Inc. ("TriAd") and cross-claim defendants Zeta Interactive Corporation ("Zeta") and Spire Media LLC ("Spire") (collectively, "Zeta/Spire") each move for summary judgment on all cross-claims asserted by TriAd under Federal Rule of Civil Procedure 56. ECF Nos. 118, 119. Decided without oral argument under Federal Rule of Civil Procedure 78, TriAd's motion is granted and Zeta/Spire's motion is denied.

## PROCEDURAL HISTORY

This matter involves Zeta/Spire's duty to indemnify TriAd for attorneys' fees and costs incurred in defending a lawsuit against them by Plaintiff Norma Vazquez ("Vazquez"). TriAd contracted with Zeta[1] for marketing services. ECF No. 118-2 ¶ 5; ECF No. 119-1 ¶ 3. As part of their Advertiser Agreement, Zeta agreed to indemnify TriAd for "any claims . . . arising from any violation of the" Telephone Consumer Protection Act ("TCPA"). ECF No. 118-2 ¶ 5; ECF No. 122-2 ¶ 4. Plaintiff Vazquez filed a putative class action complaint against TriAd on September 30, 2015, alleging that TriAd sent Vazquez an unsolicited marketing text message in

---

[1] Spire is a wholly-owned subsidiary of Zeta. ECF No. 118-2 ¶ 6; ECF No. 119-1 ¶ 2.

1

violation of the TCPA. ECF No. 1. TriAd notified Zeta of Vazquez's claim on January 8, 2016, and demanded that Zeta/Spire indemnify TriAd as per the Advertising Agreement. ECF No. 119-1 ¶¶ 12, 13; ECF No. 121-1 ¶¶ 12, 13. Zeta/Spire accepted its indemnification obligation with a reservation of rights. ECF No. 119-1 ¶¶ 14, 15; ECF No. 121-1 ¶¶ 14, 15. Zeta/Spire led the defense of Vazquez's suit, but TriAd retained its own attorney. ECF No. 119-1 ¶ 17; ECF No. 121-1 ¶ 17.

On June 27, 2016, Vazquez filed an Amended Complaint that added Zeta and Spire as defendants. ECF No. 34. TriAd cross-claimed against Zeta/Spire for indemnification. ECF No. 43 at 11-12. Following discovery, the parties settled Vazquez's claims, and her Amended Complaint was dismissed on July 25, 2017. ECF No. 108; ECF No. 119-1 ¶¶ 11, 22; ECF No. 121-1 ¶¶ 21, 22. TriAd's indemnification dispute with Zeta/Spire remains.

## FACTUAL BACKGROUND

### 1. TriAd Contracts with Zeta/Spire.

On June 12, 2014, Zeta/Spire and TriAd signed the Advertiser Agreement, under which Zeta/Spire would provide certain marketing services to TriAd. ECF No. 118-2 ¶ 5; ECF No. 119-1 ¶ 3. Section 11 of that Agreement (the "Indemnification Clause") reads:

> **Indemnification by Agency.** Agency [Zeta/Spire] hereby agrees to indemnify, defend and hold harmless Advertiser [TriAd] and its officers, directors, agents, and employees from and against all claims, actions, liabilities, losses, expenses, damages, and costs (including, without limitation, reasonable attorneys' fees) that may at any time be incurred by any of them by reason of any claims, suits or proceedings . . . (c) arising from any violation of the CAN SPAM Act of 2003, the TCPA, or any other laws, rules and regulations governing deceptive trade practices and online or telephonic marketing or advertising[.]

ECF No. 118-2 ¶ 5; ECF No. 122-2 ¶ 4.

### 2. Norma Vazquez Sues TriAd and Zeta/Spire.

Plaintiff Vazquez sued TriAd on September 30, 2015. ECF No 1; ECF No. 118-2 ¶ 6; ECF No. 119-1 ¶ 11. Vazquez claimed that TriAd had sent her an unsolicited commercial text message in violation of the TCPA. ECF No. 1 ¶ 21. She alleged that the message contained a link that directed Vazquez to a website owned and operated by TriAd. *Id.* ¶¶ 22, 23, 25.

### 3. TriAd and Zeta/Spire Defend and Settle Vazquez's Lawsuit.

TriAd notified Zeta/Spire of Vazquez's lawsuit on January 8, 2016, and demanded that Zeta/Spire indemnify TriAd for costs incurred in defending the suit. ECF No. 118-2 ¶ 7; ECF No. 119-1 ¶¶ 12, 13. Zeta/Spire agreed to indemnify TriAd while reserving "all rights and limitations on its indemnity obligation provided by the [Advertiser] Agreement." ECF No. 118-2 ¶ 8; ECF No. 119-1 ¶¶ 14, 15.

Vazquez amended her Complaint on June 27, 2016 to add Zeta and Spire as defendants; she alleged that all three of TriAd, Zeta, and Spire sent the unsolicited text message. ECF No. 34 ¶ 31. The Amended Complaint's factual allegations otherwise tracked those in the original Complaint. *Compare* ECF No. 1, *with* ECF No. 34. TriAd cross-claimed against Zeta/Spire for indemnification. ECF No. 43 at 11-12. Vazquez settled her claims with TriAd, Zeta, and Spire, but TriAd's indemnification claims remain. ECF No. 118-2 ¶ 22; ECF No. 119-1 ¶¶ 21, 22.

### 4. The Indemnification Dispute

TriAd handled Vazquez's suit on its own following the filing of the Complaint, and continued to do so for several months after notifying Zeta/Spire. ECF No. 118-2 ¶ 4; ECF No. 122-2 ¶ 4. Even after Zeta/Spire agreed to indemnification, TriAd requested that it be allowed to retain its own attorney. ECF No. 118-2 ¶ 9; ECF No. 119-1 ¶ 16. Zeta/Spire agreed and assumed its indemnification obligation under three conditions: that Zeta/Spire be allowed to

control the defense and settlement of Vazquez's suit, that TriAd's legal bills be reasonable, and that Zeta/Spire and TriAd execute a joint defense agreement. ECF No. 118-2 ¶¶ 9, 10; ECF No. 119-1 ¶ 17. TriAd agreed to Zeta/Spire leading the defense of Vazquez's suit and to keep its attorneys' fees reasonable. ECF No. 118-2 ¶ 14; ECF No. 122-2 ¶ 13. On March 28, 2017, TriAd and Zeta/Spire executed a joint defense agreement in which Zeta and Spire "acknowledged, affirmed, and accepted their [indemnification] obligation to TriAd under" the Advertiser Agreement. ECF No. 118-2 ¶ 21; ECF No. 122-2 ¶ 19.

TriAd provided to Zeta/Spire copies of its legal bills for work performed from October 2015 through July 2017 in connection with this case. ECF No. 118-2 ¶ 23; ECF No. 122-2 ¶ 21. These invoices total $210,156.40 in fees. ECF No. 118-2 ¶ 23; ECF No. 122-2 ¶ 21. TriAd has also incurred $22,152.70 in legal bills since August 1, 2017, around the time the parties settled with Vazquez. ECF No. 118-2 ¶ 24; ECF No. 122-2 ¶ 22. Zeta/Spire has not reimbursed TriAd for any attorneys' fees incurred during TriAd's defense of Vazquez's suit. ECF No. 118-2 ¶ 24; ECF No. 122-2 ¶ 22.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of

material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).

Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott*, 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Under New York law,[2] "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *In re Delta Airlines*, 608 F.3d 139, 146 (2d Cir. 2010) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002)). "The best evidence of what parties to a written agreement intend is what they say in their writing," so "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 98 N.Y.2d at 569 (internal quotation omitted). Contracts "should not be interpreted to produce a result that is absurd, commercially unreasonable[,] or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 561 (App. Div. 2003) (citations omitted).

"A contract that provides for indemnification will be enforced as long as the intent to assume such a role is 'sufficiently clear and unambiguous.'" *Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265, 274 (2007) (quoting *Rodrigues v. N & S Bldg. Contrs., Inc.*, 5 N.Y.3d 427, 433 (2005)). Courts applying New York law "must also be careful not to interpret a contracted Indemnification Clause in a manner that would render it meaningless." *Id.* at 274-75 (citing *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 212 (1971)).

New York courts construe indemnification agreements narrowly: "When an obligation to reimburse another party for its litigation expenses arises by contract, the terms of that agreement 'must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.'" *Goshawk Dedicated Ltd. v. Bank of New York*, No. 06 CIV. 13758 (MHD), 2010 WL 1029547, at *6 (S.D.N.Y. Mar. 15, 2010) (quoting *Hooper Assocs., Ltd. v. AGS Computers,*

---

[2] TriAd and Zeta/Spire agree that New York law applies to this dispute under Section 18 of the Advertiser Agreement. ECF No. 118-1 at 13 n.2; ECF No. 119-2 at 10 n.4. The Court will enforce this choice of law provision and decide the parties' motions under New York law. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183-84 (3d. Cir. 2017); *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J 324, 341 (1992).

*Inc.*, 74 N.Y.2d 487, 491 (1989)). An indemnification obligation "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Hooper*, 74 N.Y.2d at 491 (citations omitted).

**1. Plaintiff's Suit Triggered Zeta/Spire's Obligation to Indemnify TriAd.**

Zeta/Spire must indemnify TriAd under the plain terms of the Advertiser Agreement. Section 11 of that contract reads: "Zeta/Spire hereby agrees to indemnify . . . TriAd . . . against all claims, actions, liabilities, losses, expenses, damages, and costs (including, without limitation, reasonable attorneys' fees) . . . arising from any violation of . . . the TCPA[.]" ECF No. 118-2 ¶ 5; ECF No. 122-2 ¶ 4. Vazquez sued TriAd for violating the TCPA, ECF Nos. 1, 34, and TriAd incurred attorneys' fees defending that suit, ECF No. 118-2 ¶¶ 23-24; ECF No. 122-2 ¶¶ 21-22. The plain language of the Advertiser Agreement obliges Zeta/Spire to reimburse TriAd for these fees.

Zeta/Spire makes three arguments as to why it is not required to indemnify TriAd: (1) TriAd was not entitled to its own counsel when Zeta/Spire controlled the defense of Vazquez's claim, ECF No. 119-2 at 11; (2) no TCPA violation occurred, *id.* at 13-14; and (3) there is no evidence that Zeta/Spire sent the text message to Vazquez, *id.* at 12. The Court takes these arguments in turn.

    *a. TriAd Was Entitled to Its Own Counsel.*

Zeta/Spire contends that TriAd should not be reimbursed for its legal fees because Zeta/Spire controlled the joint defense of Vazquez's claims. ECF No. 119-2 at 11. This argument is problematic in two ways.

First, it is undisputed that TriAd led the defense of Vazquez's suit for some time. Vazquez sued on September 30, 2015, ECF No. 1, and Zeta/Spire did not learn of this action

until January 8, 2016. ECF No. 118-2 ¶ 7; ECF No. 119-1 ¶ 12. The parties did not agree that Zeta/Spire would lead the defense until July 13, 2016. ECF No. 118-2 ¶ 14; ECF No. 122-2 ¶ 13. Because TriAd as indemnitee was allowed to lead the defense under New York law, *see Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, 900 N.Y.S.2d 246 (2010) (indemnitor liable to indemnitee where indemnitee led the defense and, after giving notice of the underlying claim to indemnitor, negotiated good faith settlement), TriAd is entitled to reimbursement for fees incurred during this time.

Second, Zeta/Spire repeatedly agreed that TriAd could retain its own counsel while Zeta/Spire led the defense. Zeta/Spire first consented in correspondence to TriAd on June 27, 2016. *See* ECF No. 118-2 ¶ 10; ECF No. 119-2 ¶ 17. And the parties' Joint Defense Agreement provided that "nothing in this Agreement shall limit or interfere with the right or ability of a Party or its counsel to take reasonable and necessary measures to conduct its own independent analysis, litigation and/or defense of [Vazquez's] Allegations[.]" ECF No. 118-3 Ex. G ¶ 7. Consequently, Zeta/Spire has assented to Triad's retention of separate counsel.

The only remaining question is whether TriAd is entitled to reimbursement for, as Zeta/Spire puts it, "duplicat[iv]e efforts" by TriAd's attorneys. ECF No. 119-2 at 11. Zeta/Spire agreed, both in the Advertiser Agreement and in the above correspondence, that TriAd could incur "reasonable" attorneys' fees in defense of Vazquez's suit. ECF No. 118-2 ¶¶ 5, 10; ECF No. 122-2 ¶¶ 4, 9.[3] The Court will address the question of whether TriAd's fees—whether duplicative or not—were reasonable below.

---

[3] Zeta/Spire's agreement that TriAd could retain its own counsel makes *Emons Indus., Inc. v. Liberty Mut. Ins. Co.*, 749 F. Supp. 1289 (S.D.N.Y. 1990) (cited by Zeta/Spire ECF No. 119-2 at 11), in which the parties fought over who had the right to appoint counsel for their joint defense, inapposite.

### b. *Proof of a TCPA Violation Is Not Required.*

Zeta/Spire also argues that it has no indemnification obligation because the Advertiser Agreement "requires that there be an actual TCPA violation[.]" ECF No. 119-2 at 14. According to Zeta/Spire, because "[n]either Vazquez nor TriAd presents any evidence that the TCPA's elements have been met," "there is no violation and thus no indemnity." *Id.* at 13-14. TriAd disagrees, pointing to the "unambiguous" language of the Advertiser Agreement, which it argues requires Zeta/Spire to defend and indemnify TriAd "upon the filing of plaintiff's TCPA lawsuit[.]" ECF No. 118-1 at 19-20.

The Court agrees with TriAd. New York cases on this precise question—whether a contractual indemnification obligation is triggered by the filing of a lawsuit or instead only once proof of a legal violation is presented—are sparse. Neither party provides the Court with a sufficiently analogous decision. Zeta/Spire cites no New York authority for its contention that a TCPA violation must be proven—rather than merely alleged—to trigger its indemnification obligation. And the case TriAd references, *Bradley v. Earl B. Feiden, Inc.*, is inapposite because the indemnification provision there explicitly mentioned allegations. 8 N.Y.3d 265, 274-75 (2007) (enforcing provision covering claims "arising out of actual *or alleged* death or injury" (emphasis added)).

One recent New York decision supports TriAd. In *Zurich Am. Ins. Co. v. Tower Nat'l Ins. Co.*, an indemnitee settled a personal injury action against it and then sued its indemnitor for failing to reimburse for legal fees and damages. 72 N.Y.S.3d 50 (App. Div. 2018). The indemnitor argued, as Zeta/Spire does here, that it did not have any duty to indemnify because the underlying case settled and the indemnitee was never found liable for causing the alleged injury. *Id.* at 50. The Court rejected that argument: "where notice is given, the indemnitee need

not establish its own liability for the underlying claim." *Id.* (citation omitted). Though *Zurich* is not on all fours with this action,[4] its reasoning is persuasive. Proof of a legal violation is not necessary to trigger a contractual indemnification obligation under New York law.[5]

Holding otherwise would produce absurd results. Zeta/Spire, the indemnitor, controlled the defense of Vazquez's claim. ECF No. 118-2 ¶ 14; ECF No. 122-2 ¶ 13. Indeed, Zeta/Spire is the one who "negotiated with Vazquez and paid a settlement" to resolve her claims. ECF No. 119-1 ¶ 21; ECF No. 121-1 ¶ 21. Zeta/Spire, in this way, was able to preclude any proof of a TCPA violation from coming to light. Ruling for Zeta/Spire would allow indemnitors to escape their indemnification obligations simply by settling a claim before discovery.

### c. *Direct Proof that Zeta/Spire Sent the Text Message Is Not Necessary.*

Zeta/Spire further argues that the Advertiser Agreement does not cover the present dispute because there is no evidence it sent the text message to Vazquez. ECF No. 119-2 at 12. Notably, Zeta/Spire does *not* deny sending the text message. It merely claims that there is no evidence it did so. But as said, proof of a TCPA violation is not necessary to trigger Zeta/Spire's indemnification obligation. For the same reasons, evidence that Zeta/Spire sent the text message is unnecessary. Zeta/Spire, by controlling the defense, was in a position to prevent any such evidence from coming to light.

According to Zeta/Spire, because the Advertiser Agreement must be construed reasonably, the Indemnification Clause must be "limited to actions Zeta took, rather than any

---

[4] Notably, in *Zurich* the indemnitee controlled the defense and settlement of the plaintiff's claim. 72 N.Y.S.3d at 50. Here, by contrast, indemnitor Zeta/Spire controlled the settlement of Vazquez's case. ECF No. 118-2 ¶ 14; ECF No. 122-2 ¶ 13. But this distinction is irrelevant. As discussed below, allowing a controlling indemnitor to avoid indemnity by settling before a judgment of liability would produce absurd results.

[5] Zeta/Spire further contends that it could not possibly have violated the TCPA because it does not use the technology contemplated by that statute. ECF No. 119-2 at 13-14. But proof of a violation of the TCPA is not necessary to trigger indemnity under the Advertiser Agreement. That (according to Zeta/Spire) no proof of a TCPA violation could ever be forthcoming is irrelevant. Zeta/Spire's indemnification obligation was triggered once Vazquez alleged a TCPA violation against TriAd.

claim that mentions a TCPA violation." ECF No. 119-2 at 12. First, it is not clear from its terms that the Advertiser Agreement—in which Zeta/Spire agreed to indemnify TriAd "against all claims . . . that may at any time be incurred by any of them" under the TCPA, ECF No. 118-2 ¶ 5— does not cover any and all claims against TriAd under the TCPA. And even if the Indemnification Clause were limited to claims arising from Zeta/Spire's conduct, Zeta/Spire's indemnification obligation would be triggered. To repeat, indemnity arose when Vazquez *alleged* a TCPA violation, not when she eventually proved one. In the same way, when she *alleged* that one of TriAd,[6] Zeta, or Spire "transmitted a text message to Plaintiff's wireless phone" in violation of the TCPA, ECF No. 34 ¶ 31, 60, this action came within the ambit of the Indemnification Clause.

### 2. TriAd Is Not Entitled to Indemnification for Its Fees in Litigating Its Indemnification Claim.

TriAd contends that Zeta/Spire's indemnification obligation extends to fees incurred in prosecuting its indemnity cross-claims. *See* ECF No. 118-1 at 30. Zeta/Spire disagrees, arguing that fees "spent in negotiating with Zeta and pursuing [TriAd's] indemnity claim" are not recoverable under the Advertiser Agreement. ECF No. 122 at 14.

According to the New York Court of Appeals, because "a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." *Hooper*, 74 N.Y.2d at 492 (citations omitted). The *Hooper* Court concluded that the indemnitee was not entitled to reimbursement for fees incurred in seeking indemnification because the parties' contract "does not contain

---

[6] It is undisputed that TriAd did not send the text message. *See* ECF No. 121-1 ¶ 4.


language clearly permitting" such recovery. *Id.* New York courts unanimously uphold this rule. *See, e.g., Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 200 (2d Cir. 2003) (citing *Hooper*, 74 N.Y.2d 487) (indemnification provision that did not mention suits between the contracting parties did not cover such claims); *In re New York City Asbestos Litig.*, 39 N.Y.S.3d 125, 127 (App. Div. 2016) (indemnitee "not entitled to attorneys' fees incurred in prosecuting the indemnification claim") (citing *Hooper*, 74 N.Y.2d 487); *Gotham Partners, L.P. v. High River Ltd. P'ship*, 906 N.Y.S.2d 205, 206 (App. Div. 2010) (no indemnity for prosecuting indemnification claim because no "unmistakable intention" to cover such claims).

TriAd's fees incurred in prosecuting its cross-claims are not recoverable under the Advertiser Agreement. New York requires unmistakable clarity that the parties intended an indemnification provision to cover indemnification claims against the indemnitor. *Hooper*, 74 N.Y.2d at 492. TriAd argues that the Indemnification Clause covers its cross-claim because it promises indemnity for any claim "which may arise out of the breach of 'any duty, representation or warranty under [the Advertiser] Agreement.'" ECF No. 121 at 11-12. But TriAd is neither suing for nor alleging a breach of the Advertiser Agreement. TriAd has not shown the parties' "unmistakable intention" to cover an indemnification claim. *Gotham Partners*, 906 N.Y.S.2d at 206. Indeed, the Indemnification Clause's plain text does not mention or even obliquely refer to claims between the parties. *Cf. Gibbs-Alfano v. Burton*, 281 F.3d 12, 15 (2d Cir. 2002) (indemnity provision that applied to all claims "arising directly or indirectly out of *the performance of this Agreement*" covered indemnification cross-claims (emphasis added)). Consequently, this Court cannot find that the Indemnification Clause is outside *Hooper*'s standard.

Zeta/Spire goes too far, though, in arguing that TriAd's fees "spent in negotiating with Zeta" are not recoverable. ECF No. 122 at 14. Zeta/Spire cites no authority for this assertion. *Hooper* and its progeny do not support it: they specifically cover fees incurred prosecuting an indemnification claim. The Court has already determined that TriAd's fees in connection with these cross-claims are not recoverable. But TriAd's fees incurred in negotiating the terms of the indemnity before the parties' Joint Defense Agreement are recoverable. The Court cannot, based on the correspondence and invoices submitted, differentiate between attorney time spent negotiating the terms with indemnity and time spent negotiating other terms of the joint defense. As example, Zeta/Spire's June 27, 2016 message to TriAd discussed both which party would lead the defense of Vazquez's claims and TriAd's counsel's billing practices. *See* ECF No. 118-3 Ex. E. Absent any authority precluding TriAd for recovering fees incurred in negotiating the terms of its joint defense with Zeta/Spire, this attorney time is recoverable.

### 3. TriAd is Entitled to Recover Some of Its Requested Fees.

Under the Indemnification Clause, Zeta/Spire is liable for TriAd's "reasonable" attorneys' fees. ECF No. 118-2 ¶ 5; ECF No. 122-2 ¶ 4. This tracks the prevailing law in New York, which limits fee awards to "what a reasonable, paying client would be willing to pay[.]" *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). The Second Circuit holds that "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011).

In assessing whether the "presumptively reasonable fee" is, in fact, reasonable, district courts must consider some or all of the factors expressed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3. "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citations and quotations omitted). In cases involving multiple parties represented by several attorneys, courts may—but need not—strike duplicative work. *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 141-42 (E.D.N.Y. 2013). TriAd bears the burden of establishing its entitlement to the fee award and that the rates charged and hours worked were reasonable. *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994).

TriAd asks the Court for an award of $232,309.10 in attorneys' fees. *See* ECF No. 118-2 ¶¶ 23-24. According to TriAd, $210,156.40 in fees were incurred before Vazquez's claims settled, and $22,152.70 were incurred since. *Id.* Only this former figure is potentially recoverable, though, as the Court has ruled that TriAd's fees spent prosecuting its cross-claims are not covered by the Indemnification Clause.

TriAd has submitted its pre-settlement legal bills. *See* ECF No. 118-3 Ex. H. Zeta/Spire does not challenge the rates charged by TriAd's attorneys. Its objections are limited to the amounts of hours billed to certain tasks, as categorized by Zeta/Spire:

- "$70,601.50 spent responding to Vazquez's discovery requests to TriAd";
- "154.2 hours, costing $66,659.00, for general activity";
- "$27,900.00 spent on strategy, including entries for time spent reading magazine articles about the TCPA";
- "$22,975.00 spent preparing discovery to Vazquez or reviewing and responding to discovery requests to other parties"; and
- "$9,203.50 spent preparing an answer and amended answer and $23,468.50 spent unsuccessfully litigating affirmative defenses against a motion to strike."

ECF No. 119-2 at 14-16.[7] Zeta/Spire contends that some of these categories should be stricken from the bills as unnecessary, while others should be reduced due to overwork. *Id.* TriAd does not dispute these categorizations, but instead argues that it performed necessary work in reasonable amounts of time. ECF No. 121 at 9-12.[8]

Zeta/Spire first takes issue with "$70,601.50 spent responding to Vazquez's discovery requests to TriAd" because no depositions were taken and TriAd ultimately produced only one document. ECF No. 119-2 at 14-15. Zeta/Spire submits that this sum should be stricken or reduced by 90% to $7,000. *Id.* TriAd responds that "the number of relevant documents produced is not necessarily reflective of the efforts required to investigate and sort through potentially responsive documents." ECF No. 121 at 9. Zeta/Spire does not explain its suggested 90% reduction.

---

[7] Zeta/Spire also objects to "$22,080.50 [for] communicating with Zeta and demanding payment for attorney's fees." ECF No. 119-2 at 16. Because these fees were incurred in litigating TriAd's cross-claims, they are not recoverable under the Advertiser Agreement.

[8] As a threshold matter, Zeta/Spire argues that TriAd is not entitled to *any* reimbursement because TriAd declined Zeta/Spire's offer of a defense and instead hired its own attorneys to perform duplicative work. ECF No. 119-2 at 11; ECF No. 122 at 8-9. The Court has ruled that TriAd was entitled to its own counsel and under the Advertiser Agreement could recover its "reasonable" fees. ECF No. 118-2 ¶ 5; ECF No. 122-2 ¶ 4. The sole remaining issue is whether the fees incurred were reasonable.

The Court calculates[9] that TriAd spent approximately 200 hours responding to TriAd's discovery requests. These hours were spent preparing responses to Vazquez's 64 document requests, ECF No. 119-11; 15 interrogatories, ECF No. 119-12; and 26 requests for admission, ECF Nos. 119-13, 119-14. The Court finds that this work was reasonable. While some of TriAd's responses were boilerplate, ECF No. 119-13 (responding "Denied" or "Admitted" to 15 of 17 requests for admission), others were lengthy and clearly took substantial work by TriAd's counsel, *see, e.g.*, ECF No. 119-11 at 24 (Request No. 58). Most of these responses were drafted and served before Zeta and Spire were added as defendants. ECF Nos. 34, 119-11, 119-12, 119-13. Drafting discovery responses involves more than mere typing: TriAd undoubtedly needed to investigate the underlying facts before responding. Then TriAd had to review its documents in response to 64 requests for production. Zeta/Spire notes that TriAd ultimately produced only one document, and that Vazquez's Complaint centered on a single text message. ECF No. 119-2 at 14-15. But that does not mean this was an effortless case for TriAd's counsel. During discovery "an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel[.]" *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). Vazquez forced TriAd's counsel to react to nearly a hundred discovery requests on topics well beyond the sending of a single text message. Expending 200 hours over the course of multiple years on discovery of this scope was reasonable.

Zeta/Spire next objects that "TriAd's attorneys billed 154.2 hours, costing $66,659.00, for general activity," which includes emailing each other and clients, having multiple attorneys participate in conference calls, and other minor tasks. ECF No. 119-2 at 15. Zeta/Spire submits that this sum should be stricken or reduced by 90% to $6,700. *Id.* Zeta/Spire again does not

---

[9] TriAd's legal bills indicate that its attorneys charged an average of a little more than $400 per hour. *See* ECF No. 118-3 Ex. H. Reducing that rate by 15 percent—the discount TriAd received from its counsel, *id.*—produces an average fee of about $350 per hour.

explain its suggested 90% reduction. On the one hand, nearly all legal representations involve emails with clients, conference calls, and minor case management tasks. On the other hand, certain of TriAd's time entries reflect unnecessary duplication of work, particularly having multiply attorneys participate in conference calls on numerous occasions.[10] The Court will reduce TriAd's award for this category by 50 percent—or $33,329.50.

Zeta/Spire further contends that the Court should strike bills totaling $27,900.00 for time "spent on strategy, including entries for time spent reading magazine articles about the TCPA" because the time spent is excessive and because Zeta/Spire's counsel was already experienced in TCPA litigation. ECF No. 119-2 at 15. The Court calculates that TriAd's counsel spent roughly 80 hours on strategy. Vazquez's suit against TriAd lasted for almost 20 months, during which TriAd's counsel needed to become familiar with the TCPA, engage in motion practice and discovery, and participate in one mediation and numerous (ultimately successful) settlement discussions. 80 hours strategizing during this time is reasonable, particularly given TriAd's potential exposure to Vazquez's class action claims. The Court disagrees that this effort was unnecessary given Zeta/Spire's counsel's experience with TCPA claims. Because the sole time entry for reading TCPA articles is before the parties signed their joint defense agreement, ECF No. 118-2 ¶ 21, TriAd's counsel should not be expected to rely on Zeta/Spire's counsel's expertise. TriAd's attorneys' fees for "strategy" are reasonable.

Zeta/Spire next argues that "$22,975.00 spent preparing discovery to Vazquez or reviewing and responding to discovery requests to other parties" should be stricken as "duplicative" of Zeta/Spire's efforts. ECF No. 119-2 at 15. The Court calculates that TriAd spent roughly 65 hours on this additional discovery. The Court sees no problem with this

---

[10] The Court notes that multiple TriAd attorneys attended conference calls on October 27, 2015, January 4, 2016, February 25, 2016, and several other occasions. ECF No. 118-3 Ex. H.

expenditure. Most of these tasks—such as preparing a joint discovery plan and responding to myriad discovery requests—were performed before TriAd and Zeta/Spire had executed their joint defense agreement. *See* ECF No. 118-2 ¶ 21; ECF No. 118-3 Ex. H. Moreover, TriAd—with Zeta/Spire's assent—retained separate counsel throughout the case. Given the volume of discovery requests TriAd received, 65 hours spent strategizing and responding to them is not unreasonable.

Zeta/Spire finally wants "$9,203.50 spent preparing an answer and amended answer and $23,468.50 spent unsuccessfully litigating affirmative defenses against a motion to strike" reduced to $5,000, which represents "a reasonable amount for a straightforward answer that follows established pleading rules." ECF No. 119-2 at 16. The Court calculates that TriAd spent 26 hours on its answer and amended answer, and another 67 hours litigating the motion to strike. These sums are excessive. TriAd's answer consisted primarily of boilerplate denials and affirmative defenses. *See* ECF No. 9. TriAd's amended answer barely changed: it denied the allegations in 5 new paragraphs, denied knowledge or information regarding the allegations in 9 paragraphs, and made no substantive changes to the remaining responses. ECF No. 43. 26 hours is unnecessary for this work. *Cf. Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 298 (E.D.N.Y. 1995) (4.5 hours spent preparing answer is reasonable). So too for the 67 hours spent opposing Vazquez's motions to strike. TriAd filed a fifteen-page memorandum opposing Vazquez's first motion, and a nine-page one in opposition to Vazquez's second motion to strike. *See* ECF Nos. 16, 55. These two filings made similar arguments—for example that Vazquez's motion was premature and that Vazquez failed to allege prejudice. *Id.* TriAd's counsel did not need to spend 67 hours on these memoranda. The Court will reduce TriAd's

award for time spent on the motions to strike and the answers by 50 percent—or $11,634.25 for the motions to strike and $4,601.75 for the answers.[11]

***************

TriAd requests $232,309.10 in attorneys' fees—$210,156.40 from before Vazquez's claims settled, and $22,152.70 in fees afterward. ECF No. 118-2 ¶¶ 23-24. As discussed, the post-settlement fees are not recoverable. The pre-settlement fees are recoverable in part. As set forth, TriAd is entitled to its requested pre-settlement fees, minus 50 percent ($33,329.50) of the fees incurred for general activity and 50 percent ($16,236.00) of the fees for TriAd's answers and responses to Vazquez's motions to strike. The Court finds that TriAd is entitled to indemnity from Zeta/Spire in the amount of $160,590.90.

## CONCLUSION

TriAd's motion for summary judgment is granted, and Zeta/Spire's motion for summary judgment is denied. An appropriate order follows.

DATE: 13 December 2018

William H. Walls
Senior United States District Court Judge

---

[11] Zeta/Spire argues that TriAd should not receive indemnity for "unsuccessfully" opposing the motions to strike. ECF No. 119-2 at 16. But Vazquez's first motion was denied in part, and its second was denied in its entirety. *See* ECF Nos. 19, 69. Regardless, unsuccessful efforts are compensable so long as they are not "frivolous." *Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir. 1980).